## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| v. | ) | |
| | ) | Case No. 4:18-cv-1695 |
| NL INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The United States of America, by the authority of the Attorney General of the United States, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this complaint and allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action brought against NL Industries, Inc. ("NL" or "Defendant") pursuant to Sections 106, 107(a), and 113(g) of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9606, 9607(a), and 9613(g), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("CERCLA"), regarding Operable Unit 1 (OU-1) of the Big River Mine Tailings Superfund Site in St. Francois County, Missouri ("Site"). Plaintiff seeks the recovery of its unreimbursed response costs incurred, and to be incurred, and the performance of response actions by the Defendant consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP"). The United States also seeks a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. §9613(g)(2), holding the Defendant liable for all future response costs that will be binding in any subsequent action or actions to recover further response costs incurred by the United States at or in connection with OU-1 of the Site.

JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action and over the

Defendant under 28 U.S.C. §§ 1331, 1345, and 1367, and Section 113(b) of CERCLA, 42 U.S.C.

§ 9613(b).

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and

Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the relevant releases or threatened

releases of hazardous substances occurred within this district.

STATUTORY FRAMEWORK

4.      CERCLA was enacted in 1980 to provide a comprehensive governmental

mechanism for abating releases and threatened releases of hazardous substances and other

pollutants and contaminants and for funding the costs of such abatement and related enforcement

activities, which are known as "response actions." 42 U.S.C. §§ 9604(a); 9601(25).

5.      Under Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1):

> Whenever (A) any hazardous substance is released or there is a
> substantial threat of such a release into the environment, or (B)
> there is a release or substantial threat of release into the
> environment of any pollutant or contaminant which may present an
> imminent and substantial danger to the public health or welfare,
> the President is authorized to act, consistent with the national
> contingency plan, to remove or arrange for the removal of, and
> provide for remedial action relating to such hazardous substance,
> pollutant, or contaminant at any time (including its removal from
> any contaminated natural resource), or take any other response
> measure consistent with the national contingency plan which the
> President deems necessary to protect the public health or welfare
> or the environment. When the President determines that such
> action will be done properly and promptly by the owner or
> operator of the facility or vessel or by any other responsible party,
> the President may allow such person to carry out the action,
> conduct the remedial investigation, or conduct the feasibility study
> in accordance with section 9622 of this title.

6.      For CERCLA response actions and enforcement purposes, the Administrator of

EPA is the President's delegate, as provided in operative Executive Orders.

7.      Under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a):

>    (1)  [T]he owner and operator of a vessel or a facility,

>    (2)  any person who at the time of disposal of any hazardous
>    substance owned or operated any facility at which such hazardous
>    substances were disposed of, [or]

>    (3)  any person who by contract, agreement, or otherwise arranged
>    for disposal or treatment, or arranged with a transporter for
>    transport for disposal or treatment, of hazardous substances owned
>    or possessed by such person, by any other party or entity, at any
>    facility or incineration vessel owned or operated by another party
>    or entity and containing such hazardous substances, . . .

>    shall be liable for—

>    (A)  all costs of removal or remedial action incurred by the United
>         States Government or a State or an Indian tribe not
>         inconsistent with the national contingency plan . . .

8.      Under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), the United States is also

authorized to seek injunctive relief necessary to abate the imminent and substantial

endangerment to the public health or welfare, or the environment, that may result from an actual

or threatened release of a hazardous substance at or from a facility.

<u>THE SITE</u>

9.      The Site is located in southeastern Missouri about seventy miles south of St.

Louis, within St. Francois County, Missouri.

10.     Lead mining began in St. Francois County in the early 1700s and was continuous

from the mid-1700s until the mid-1970s.  During this approximately 200 year period of intensive

lead mining, the mines, milling operations, and associated facilities in the county became known

as Missouri's "Old Lead Belt"

11. Between 1864 and 1970, more than eight million tons of lead concentrate were produced in the Old Lead Belt. Production of this concentrate created an estimated 250 million tons of waste, primarily in the form of chat and tailings. Chat is relatively coarse-grained rock fragments produced during the milling process and transported to large waste piles that eventually reached as much as 200 feet in height. Tailings, a finer-grained waste product of later milling technologies, were disposed via discharge into liquid impoundments covering as much as several hundred acres, known as tailings ponds.

12. The Site contains eight large distinct chat pile and tailings pond areas, which together cover thousands of acres: Desloge (also called Big River); National; Leadwood; Elvins (also called Rivermines); Bonne Terre; Federal (which contains St. Joe State Park); Doe Run; and Hayden Creek (each a "Waste Pile" and collectively, the "Waste Piles")

13. Each of the Waste Piles contain hazardous substances such as lead, cadmium, and zinc.

14. Numerous environmental investigations have been conducted in St. Francois County. These investigations show that mine waste materials containing lead, cadmium and zinc have migrated from the Waste Piles via wind erosion, bank erosion, storm water runoff, leachate and mechanical transport. As a result, surface waters, sediments, and soils, including residential soils, in St. Francois County contain elevated levels of lead, cadmium and zinc.

15. Other sources of lead at the Site include lead smelting operations, degraded lead paint on homes and businesses, and leaded gasoline.

16. OU-1 of the Site comprises all "Residential Yards" (a term which includes properties that contain single and multi-family dwellings, apartment complexes, vacant lots in

4

residential areas, schools, daycare centers, playgrounds, parks, and greenways) within St. Francois County where lead has come to be located.

17.     Lead is a metal that has been listed as a hazardous waste ("D008") in the regulations for the Resource Conservation and Recovery Act ("RCRA"). EPA classifies lead as a probable human carcinogen and as a cumulative toxicant. Exposure to lead can increase the risk of future adverse health effects, such as damage to the central nervous system, peripheral nervous system, and kidney and blood disorders. Lead poisoning causes decreased physical fitness, fatigue, sleep disturbance, headache, aching bones and muscles, digestive symptoms (particularly constipation), abdominal cramping, nausea, vomiting, and decreased appetite. With increased exposure, symptoms include anemia, pallor, a "lead line" on the gums, and decreased hand grip strength. Central nervous system effects include severe headaches, convulsions, coma, delirium, and possibly death. The kidneys can also be damaged after long periods of exposure to lead, with loss of kidney function and progressive azotemia. Reproductive effects in women include decreased fertility, increased rates of miscarriage and stillbirth, decreased birth weight, premature rupture of membrane, and/or pre-term delivery. Reproductive effects in men include erectile dysfunction, decreased sperm count, abnormal sperm shape and size, and reduced semen volume. A significant amount of lead that enters the body is stored in the bone for many years and can be considered an irreversible health effect.

18.     Young children (typically defined as seven years of age or below) are the most sensitive population group potentially exposed to lead contamination at the Site. Young children are most susceptible to lead exposure because they have higher contact rates with soil and dust, absorb lead more readily than adults, and are more sensitive to the adverse effects of lead than older children-and adults. The effect of exposure to lead contamination of greatest concern in

children is impairment of the nervous system, including learning deficits, lowered intelligence, and adverse effects on behavior.

19.     In May 1997, the Missouri Department of Health and Senior Services ("MDHSS") released a draft Lead Exposure study of children in the Old Lead Belt of St. Francois County.  The MDHSS study, included sampling children's blood, sampling environmental media such as soil and dust, and questioning residents about their lifestyle as it related to lead exposure.  The study compared the results of blood lead levels collected from children in the Old Lead Belt of St. Francois County to blood lead level test results collected from children during the study on a control area, Salem, Missouri, located outside the Site.  In the Old Lead Belt, about 17% of the children tested showed a blood lead level of more than 10 micrograms/deciliter whereas only about 3% of the children in Salem showed a blood lead level of more than 10 micrograms/deciliter.

20.     EPA conducted a Baseline Human Health Risk Assessment ("HHRA") for the Site in 2009.  The HHRA assesses the potential risks to humans, both present and past, from Site related contaminants present in environmental media including surface soil, indoor dust, sediment, surface water, groundwater, and fish tissue. The results of the HHRA are intended to inform risk managers and the public about potential human health risks attributable to site-related contaminants and to help determine if there is a need for action at the Site.

21.     The HHRA identified lead as the primary contaminant of concern for OU-1 of the Site.

22.     In accordance with the NCP, EPA issued a Record of Decision (ROD) for OU-1 on September 30, 2011.  EPA's selected Remedial Action, as fully set forth in the ROD, calls for the excavation of soil from residential yards until lead concentrations in the top 12 inches are

below 400 parts per million, or below 1,200 parts per million below 12 inches down to 24 inches below the surface. Based on current sampling, EPA estimates that 4,800 residential yards may ultimately be addressed within the Response Area (which comprises the portions of the Site within one mile of any of the Waste Piles) as part of the Remedial Action. EPA is aware of a further 393 residential yards within OU-1 but outside the Response Area that meet the action levels set forth in the ROD and have not yet been remediated.

DEFENDANT

23.     NL is a person within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21), is incorporated in New Jersey and was licensed to do business in the State of Missouri from 1892 until 2005.

24.     The St. Louis Smelting and Refining Company, was incorporated in Missouri 1891.

25.     The St. Louis Smelting and Refining Company was a wholly-owned subsidiary of the National Lead Company.

26.     In 1971, the National Lead Company changed its name to NL Industries, Inc.

27.     NL is the corporate successor to the St. Louis Smelting and Refining Company and the National Lead Company.

28.     In 1898, the St. Louis Smelting and Refining Company purchased property from the Flat River Lead Company that was then being used for mining operations. St. Louis Smelting and Refining Company then commenced mining operations, including the sinking and operation of new mine shafts, on this property shortly thereafter.

29.     In 1901, St. Louis Smelting and Refining Company begin operating a concentrating mill on the property.

30.     St. Louis Smelting and Refining Company acquired property around its existing holdings from other parties until approximately 1917, when it began to sell much of its property.

31.     St. Louis Smelting and Refining Company conducted mining and milling operations and accepted ore for concentrating from other mining entities until 1917.

32.     In 1917, St. Louis Smelting and Refining Company transferred the mining and milling properties at Flat River (then known as the National Mine and Mill) to the National Lead Company.

33.     National Lead Company continued mining and milling operations, including accepting ore for milling from other mining entities, at the National Mine and Mill until 1936, when it sold the property.

34.     The mining and milling activities of the St. Louis Smelting and Refining Company and the National Lead Company from approximately 1898 through 1936 resulted in the creation of tailings, mill waste, and other mine waste.

35.     The St. Louis Smelting and Refining Company and the National Lead Company placed the mine waste generated by their mining and milling activities on the ground (and later, on top of previously deposited mine waste) in an open, unlined area of their property that came be to be known as the National Waste Pile.

36.     The mine waste placed in the National Waste Pile contained hazardous substances, including lead.

37.     Hazardous substances, including lead, initially deposited at the National Waste Pile came to be located by various mechanisms in residential yards within St. Francois County, including:

        a.   Air-borne dispersion and deposition of mine waste by wind;

8

       b.   Water-borne dispersion and deposition of mine waste by rain, snow, and other forms of weather-related water

38.     In addition, hazardous substances, including lead, from the Waste Piles came to be located in Residential Yards via mechanical transport.  Beginning in the early 1900s and extending through the early 2000s, individuals and corporate entities removed chat and tailings from some Waste Piles for some time periods within this range, for use as agricultural amendment, construction fill, play areas such as sandlots, and other uses.  This resulted in the placement of mine waste containing hazardous substances, including lead, in Residential Yards and other locations.  Some of these individuals and corporate entities were allowed to take waste materials for free, while others paid for the waste materials.

## GENERAL ALLEGATIONS

39.     NL and/or its corporate predecessors disposed of hazardous substances, including lead, at the National Waste Pile during the times that they owned and/or operated the National Waste Pile.

40.     Hazardous substances, including lead, have been released to the environment at and from the National Waste Pile to Residential Yards within St. Francois County.

41.     The Site was listed on the National Priorities List, created by Section 105(a)(8)(B) of CERCLA, 42 U.S.C. § 9605(a)(8)(B), on October 14, 1992.  See 57 Fed. Reg. 47180.

42.     EPA has conducted various response actions at the Site.

43.     As a result of these response actions, EPA has incurred response costs in connection with the Site.

<u>CLAIMS FOR RELIEF</u>

**COUNT I – PAST OWNER/OPERATOR LIABILITY**

44.     Paragraphs 1 through 43 are realleged and incorporated herein by reference.

45.     The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

46.     The National Waste Pile is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

47.     There have been releases, within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), and threatened releases, of hazardous substances, within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), at or from the National Waste Pile and the Site.

48.     The United States has incurred costs of response, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), in connection with the releases or threatened releases of hazardous substances at or from the National Waste Pile and the Site.

49.     The United States' response actions at the Site are not inconsistent with the NCP.

50.     The Defendant is liable under Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), as a person who owned and/or operated a facility at the time of disposal of a hazardous substance.

51.     Pursuant to Section 107(a) of CERCLA, Defendant is liable to the United States for all response costs incurred in connection with the Site.

**COUNT II – LIABILITY FOR PERFORMANCE OF REMEDIAL ACTION**

52.     Paragraphs 1 through 51 are realleged and incorporated by reference.

10

53.     The actual and threatened releases of hazardous substances, including lead, at the Site may constitute an imminent and substantial endangerment to public health or welfare or the environment.

54.     Implementation of the Remedial Action selected in the ROD for OU-1 is necessary to abate the danger to public health or welfare and the environment posed by the actual and threatened releases of hazardous substances, including lead, at the Site.

55.     Pursuant to Sections 106(a) and 107(a) of CERCLA, 42 U.S.C. §§ 9606(a), 9607(a), Defendant is liable for the performance of the Remedial Action.

PRAYER FOR RELIEF

56.     Wherefore, the United States respectfully requests that this Court:

        a.     Enter judgment in favor of the United States, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), holding the Defendant liable for all unreimbursed costs incurred by the United States in connection with OU-1 of the Site, including interest;

        b.     Enter judgment in favor of the United States, under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a), holding Defendant liable for the performance of the Remedial Action selected in the ROD for OU-1 of the Site;

        c.     Enter a declaratory judgment of liability against Defendant that will be binding in any action to recover further response costs incurred by the United States in connection with OU-1 of the Site.

        d.     Award the United States its costs of this action; and

        e.     Grant such other and further relief as the Court deems appropriate.

11

Respectfully Submitted,

**FOR THE UNITED STATES OF AMERICA:**

Dated: _10/3/18_

JEFFREY H. WOOD
Acting Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division
Washington, D.C. 20530

Eric D. Albert
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-2800 (direct)
Eric.albert@usdoj.gov

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
NL Industries, Inc.

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Eric D. Albert, USDOJ/ENRD/EES
601 D St. NW, Washington DC 20044
202-514-2800 (direct)

Attorneys *(If Known)*
Christopher Gibson, Archer & Greiner P.C.
One Centennial Sq., Haddonfield NJ 08033
856-354-3077

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [X] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. ss 9606, 9607, 9613
Brief description of cause:
For recovery of response costs and performance of the selected remedy

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE

DOCKET NUMBER

DATE
10/04/2018

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| United States of America | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 4:18-cv-1695 |
| NL Industries, Inc. | ) |
| | ) |
| | ) |
| Defendant, | ) |
| | ) |

**ORIGINAL FILING FORM**

**THIS FORM MUST BE COMPLETED AND VERIFIED BY THE FILING PARTY WHEN INITIATING A NEW CASE.**

☐     THIS SAME CAUSE, OR A SUBSTANTIALLY EQUIVALENT COMPLAINT, WAS

PREVIOUSLY FILED IN THIS COURT AS CASE NUMBER _____

AND ASSIGNED TO THE HONORABLE JUDGE _____.

☐     THIS CAUSE IS RELATED, BUT IS NOT SUBSTANTIALLY EQUIVALENT TO ANY

PREVIOUSLY FILED COMPLAINT. THE RELATED CASE NUMBER IS _____ AND

THAT CASE WAS ASSIGNED TO THE HONORABLE _____. THIS CASE MAY,

THEREFORE, BE OPENED AS AN ORIGINAL PROCEEDING.

☒     NEITHER THIS SAME CAUSE, NOR A SUBSTANTIALLY EQUIVALENT

COMPLAINT, HAS BEEN PREVIOUSLY FILED IN THIS COURT, AND THEREFORE

MAY BE OPENED AS AN ORIGINAL PROCEEDING.

The undersigned affirms that the information provided above is true and correct.

Date: _10/4/18_                    _____
                                   Signature of Filing Party